456 So.2d 540 (1984)
Kenneth THOMAS, Petitioner,
v.
BREVARD COUNTY SHERIFF'S OFFICE CIVIL SERVICE BOARD and C.W. Miller, Sheriff, Respondents.
No. 83-1455.
District Court of Appeal of Florida, Fifth District.
September 20, 1984.
*541 Joseph R. Moss of Joseph R. Moss, P.A., Cocoa, for petitioner.
Catherine A. Riley, Titusville, for respondent Miller.
DAUKSCH, Judge.
This case is before the court on a Petition for Writ of Certiorari to review a decision of the Circuit Court in and for Brevard County acting in its appeal capacity. Jurisdiction is based on Article V, Section 4(b)(1), Florida Constitution. The standard of review is narrow; this court's function is to determine "... whether the circuit court afforded procedural due process and applied the correct law." City of Deerfield Beach v. Vaillant, 419 So.2d 624 (Fla. 1982). As our supreme court recently held, "[t]he district courts should ... [grant certiorari] only when there has been a violation of a clearly established principle of law resulting in a miscarriage of justice." *542 Combs v. State, 436 So.2d 93, 96 (Fla. 1983). We find the circuit court did not depart from the essential requirements of law and did apply the correct law. Thus we deny certiorari.
Petitioner, Kenneth Thomas, was a deputy sheriff with the rank of sergeant in the Brevard County Sheriff's Department until April 3, 1982. On that date Sheriff Miller suspended petitioner for thirty days pending dismissal from employment at the expiration of the thirty-day suspension period. The ground for the dismissal is insubordination consisting of petitioner's refusal to obey a direct order from a superior officer to answer a question posed to him during the course of an investigatory interrogation.
In March, 1982, the Bureau of Staff Services of the Brevard County Sheriff's Department conducted an internal investigation of Deputy Steve Hester. During the investigation Deputy Hester requested to be given a polygraph examination. After the results of the polygraph examination indicated deception, Deputy Hester sought the advice of petitioner Thomas. Both men were off duty when Hester called petitioner at his home; both testified that their conversation about the polygraph examination was one between friends and was not in their official capacities. During the conversation Deputy Hester told petitioner that he would like to take another polygraph examination. Petitioner responded that he would try to find out who could give Hester a second examination.
Subsequent to his phone conversation with Deputy Hester, petitioner phoned a friend of his, Wayne Porter. Wayne Porter is an investigator in the State Attorney's office in Brevard County, and a polygraph examiner. Petitioner phoned Wayne Porter at home, at night, after work; Porter considered it a personal call. Porter testified that his conversation with petitioner in no way involved Porter's employment at the State Attorney's office. Petitioner asked Porter about the plausability of administering a second polygraph examination to Deputy Hester. Porter gave petitioner the name of a private polygraph examiner in Titusville who might be able to administer the second examination. Wayne Porter testified that petitioner never, during their conversation, questioned the ability or lack thereof of the examiner who first tested Deputy Hester.
In a statement he gave on March 17, 1982 to one of the department's internal investigators Deputy Hester described the contents of his conversation with petitioner about taking a second polygraph examination. Deputy Hester stated that petitioner agreed to make a phone call in Hester's behalf regarding a second examination. Hester also stated that though petitioner never told Hester the name of the individual whom he intended to contact, he did mention the State Attorney's office.
Subsequent to Deputy Hester's statement, Commander Frank Billings interrogated petitioner. At the interrogation, Commander Billings asked petitioner the name of the individual he had contacted regarding a second polygraph examination for Deputy Hester. Commander Billings testified that the answer to this question was important because the department had learned from Hester that petitioner called the State Attorney's office; Billings was concerned that the call to the State Attorney's office may have been in petitioner's official capacity, judging or attempting to judge the credibility of the Sheriff's Department, specifically, the sheriff himself. Petitioner refused to identify the individual he contacted even after a direct order from Billings "in my capacity as commander." After the interview with petitioner, Commander Billings recommended to the sheriff that he terminate petitioner for gross insubordination to Billings during the questioning period. Sheriff Miller followed Commander Billings' recommendation and suspended petitioner pending termination.
At petitioner's request, the Civil Service Board of the Brevard County Sheriff's Department conducted a hearing on April 28, 1982. At the conclusion of testimony, the Civil Service Board found that petitioner had been insubordinate in refusing to answer *543 Commander Billings' question. The Board was equivocal, however, on this issue. The transcript reveals the panel member's uncertainty that Commander Billings' order was a lawful order requiring petitioner to respond. This was an important question for the Board's inquiry because if the order was not a lawful one, petitioner was not insubordinate in refusing to obey it and Sheriff Miller was not justified in disciplining him. By the date of the hearing, the thirty-day suspension period was almost expired. The following colloquy between two of the three Board members implies that the Board may not have concluded that petitioner's conduct was insubordinate if it knew it had no authority to reduce the penalty.
CHAIRMAN NANCE: I will agree that there was insubordination and I think the question is the severity of the penalty.
MR. KUTSCHE: I've got a little bit of a problem even with the question of insubordination.
CHAIRMAN NANCE: I've got a problem with it too, but I mean to make it to expedite the circumstances.
Incorrectly believing they had the authority to do so, the Board decided that termination is too severe a penalty for petitioner's offense. It reduced the penalty to thirty days suspension (of which petitioner had completed all but two days) and ordered petitioner reinstated to his former rank of sergeant at the end of the suspension period.
Petitioner appealed the order of the Civil Service Board to the Circuit Court in Brevard County and the sheriff cross-appealed. On the sheriff's motion, the circuit court treated the appeals as a petition and cross-petition for common law writ of certiorari. The circuit court, serving in its appellate capacity, affirmed the Civil Service Board's finding of insubordination and reversed the Board's finding that dismissal was too severe a penalty. The lower court concluded that once the Civil Service Board determined that petitioner had been insubordinate it was without authority to substitute its judgment for that of the sheriff as to the severity of the disciplinary action imposed.
Chapter 67-1149, Laws of Florida, creates in Brevard County a Civil Service Board to administer a civil service system for the deputy sheriffs and the employees of the office of sheriff of Brevard County.[1] Section 17 of Chapter 67-1149, Laws of Florida, provides that "the sheriff may suspend or dismiss an employee for any just cause which, in his opinion, will promote the efficiency of the service." Section 17 also provides that a dismissed employee or deputy has an absolute right to a hearing in front of the Civil Service Board of Brevard County Sheriff's Department. After such a hearing, "the Board may reinstate the person removed only in case it appears ... that the removal was made for reasons other than just cause." Thus, the Board's inquiry is restricted to determining whether there is just cause to support the disciplinary action which the sheriff imposed; the Board has no power to modify the sheriff's disciplinary action unless it finds that there is no just cause for the action taken.
Section 300 of the Brevard County Sheriff's Department Rules and Regulations Manual advises the members and employees of the Brevard County Sheriff's Department that
... violation of, or deviation from, the rules and regulations set forth in this section shall result in disciplinary action. Said disciplinary action may result in imposition of any or all of the following sanctions:
1) verbal reprimand
2) written reprimand
3) transfer
4) suspension without pay
5) demotion

*544 6) dismissal
The specific sanction(s) imposed will depend upon the nature and/or severity of the violation or deviation and any other information that may be considered relevant.
Section 300-7 of the Brevard County Sheriff's Department Rules and Regulations Manual defines insubordination and states that insubordinate conduct on the part of a member or employee of the Sheriff's Department is grounds for imposition of one or all of the disciplinary measures provided in Section 300:

Insubordination: Any member or employee who deliberately refuses or fails to obey any lawful order given by a superior officer or who engages in mutinous conduct such as showing gross and direct disrespect to a superior officer, shall be guilty of insubordination and in violation of this regulation.
Reading Chapter 67-1149, Section 17, Laws of Florida and Sections 300 and 300-7 of the Brevard County Sheriff's Department Rules and Regulations Manual together, it is apparent that insubordination is sufficient just cause for the sheriff to suspend or dismiss the insubordinate employee or deputy. In the case at bar the Civil Service Board of the Brevard County Sheriff's Department exceeded its authority, when, after determining that petitioner had been insubordinate, it reduced the penalty which the sheriff imposed to a period of suspension. The circuit court, in its appeal capacity, correctly construed the law when it stated:
Once "just cause" is established, the sheriff has the absolute right to dismiss his deputy. The Civil Service Board is without authority to substitute its opinion for that of the sheriff as to the severity of disciplinary action imposed, provided said disciplinary action is authorized by law.
The lower court correctly applied the law when it reversed the Civil Service Board's modification of the penalty imposed on petitioner and reinstituted the penalty laid down by the sheriff.[2]
Although the result in this case is unseemly in light of petitioner's rather insignificant act of insubordination, the narrow standard of review on a petition for writ of certiorari prevents this court from granting relief where the lower court afforded petitioner procedural due process and correctly applied the law to the case. Counsel and the Civil Service Board must assume responsibility for this result because the Board did not realize, and counsel did not instruct it, that it had no authority to alter the penalty the sheriff imposed after it determined that just cause for discipline existed. It is clear that the board considered termination of petitioner's employment too harsh a penalty for his insubordinate conduct in this case. Rather than concluding that insubordination existed "... to expedite the circumstances ...", the board should have more energetically inquired whether petitioner disobeyed a lawful order and, consequently, whether the sheriff had just cause to discipline petitioner at all. The case is before this court, however, on a petition to review a decision of the circuit court, not one of the Civil Service Board, and there is no basis upon which to reverse the circuit court's decision. The petition is denied.
Petition denied.
FRANK D. UPCHURCH, Jr., and COWART, JJ., concur.
NOTES
[1] This special law affords deputy sheriffs in Brevard County more due process protection than deputy sheriffs are generally entitled to in Florida. See Szell v. Lamar, 414 So.2d 276 (Fla. 5th DCA 1982) (Deputy Sheriff has no property interest in his office and no constitutional due process protections when he is dismissed).
[2] The question of whether the circuit court afforded petitioner procedural due process does not require lengthy discussion. Petitioner was afforded at least the minimal due process protections at every level of review. Petitioner requested the hearing before the Civil Service Board so he clearly had notice of it; at the hearing, petitioner had the opportunity to be heard and to confront his accusers. Before the circuit court, petitioner, again, was afforded notice and an opportunity to be heard.